# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RAMON SATYENDRA,

    Plaintiff,

v.

UNIVERSITY OF MICHIGAN;
UNIVERSITY OF MICHIGAN
BOARD OF REGENTS,

    Defendants.

Case No. 23-cv-12115

Hon.

---

HIDEAKI SANO (P61877)
SALVATORE PRESCOTT
PORTER & PORTER PLLC
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
sano@spplaw.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff Ramon Satyendra by and through his attorneys, SALVATORE PRESCOTT PORTER & PORTER, submits this Complaint and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Ramon Satyendra is a resident of Ann Arbor, Michigan, which is within the Eastern District of Michigan.

2.  Defendant University of Michigan is a public university (the "University").

3.  Defendant Board of Regents of University of Michigan is the publicly elected body that has general supervision of the University. The University and its Regents are collectively referred to herein as the "University Parties".

4.  Claims in this action are for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.

5.  Plaintiff filed a charge with the EEOC for discrimination and retaliation on September 6, 2021. Plaintiff received a right-to-sue letter on May 19, 2023.

6.  This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

## GENERAL ALLEGATIONS

7.  Professor Satyendra is an Associate Professor (with tenure) in the Music Theory Department of the University of Michigan School of Music, Theater, & Dance ("SMTD").

8.  Professor Satyendra has been a member of the faculty since approximately 2001. Professor Satyendra is a minority male.

2

9. Professor Satyendra has served in various capacities during his tenure at the University, including as Chair of the Music Theory Department and as a member of Executive Committee of SMTD.

10. Professor Satyendra is a highly regarded and popular Professor at SMTD.

***Professor Satyendra observes and reports potential events of discrimination.***

11. During his tenure at SMTD, Professor Satyendra has on occasions observed and experienced actions that raised concerns about potential racial discrimination, including actions by professors in the Music Theory Department.

12. But in late 2020, he became concerned about a group of white professors in the Music Theory Department, that appeared to be taking actions that had a discriminatory impact. As just a few examples:

   a. a prominent minority, male faculty member was denied tenure in a manner that appeared to be manipulated by hostile white faculty in the department;

   b. the white chair of the Department announced that her DEI strategy would center on a newly hired white professor teaching DEI courses;

   c. the white chair of the Department appeared to have manipulated Professor Satyendra and another minority professor off of a hiring committee and formed an all-white hiring committee;

3

d. the same white chair began favoring white faculty and excluding minority faculty from favorable course selections, for example, teaching anti-racism courses;

e. the same white chair wrote a DEI report that focused on white professors in the Department, and marginalized minority professors, including Professor Satyendra who was not even mentioned in the report;

f. the white faculty would support each other – and not involve minority faculty – for example, in one case nominating a white male faculty for an MLK Spirit Award, while ignoring minority professors who had made significant DEI contributions.

13. Professor Satyendra initially attempted to raise these concerns with the then Vice Provost and Chief Diversity Officer, Faculty Ombuds and OIE, but was seeking a mediated intervention. Given Professor Satyendra's concerns about retaliation, the Vice Provost notified the Dean of SMTD, Dean Gier, of the minority concerns in the Music Theory Department without mentioning Professor Satyendra's name.

14. Thereafter, the white Chair of the Department engaged in various actions that were discriminatory. Examples include refusing to respond to Professor Satyendra about his teaching assignment or teaching assignment policies, excluding Professor Satyendra from faculty discussions (and, indeed, refraining from

interacting with him except when absolutely necessary), refusing to respond or even refer to Professor Satyendra by name until, after he raised the issue, responding to Professor Satyendra in a hostile manner; and even giving him an unpleasant look on the rare occasion they personally interacted.

15. Thereafter, the white Chair of the Department became aware of Professor Satyendra's complaint that she was engaged in racially discriminatory actions against him. Thereafter, the white Chair of the Department began retaliating against Professor Satyendra. Among other actions, she publicly "outed" him at a faculty meeting by attacking him for having made the complaint against her and then attacking Professor Satyendra's character by attacking the veracity of the complaint and providing him a negative performance review – his first such negative review in his time at SMTD.

16. Notably, Professor Satyendra attempted to report various events with administrators at SMTD and the University, but they neither credited his complaints or expressed concerns about the actions of his white Department chair. Indeed, at one point, when Professor Satyendra noted that his white Department chair was treating him in a manner that was excluding him from exercising his faculty rights and violated SMTD's written policy, rather than enforce the written policy, SMTD asserted that some vague past practice overruled the written policy and supported

5

her actions and ultimately changed the written policy to validate her improper actions.

17. The stress caused by the hostile environment and the refusal of SMTD or the University to take any actions has caused Professor Satyendra to suffer material psychological harm that is interfering with his ability to perform his job duties to the maximum of his abilities.

18. Professor Satyendra finally filed a complaint with ECRT. ECRT conducted an investigation and determined that the white Chair of his Department had in fact retaliated against him. Although ECRT did not find sufficient evidence to support a finding of discrimination based on race, it did note that the behavior of the white Department chair was problematic and not consistent with the values and expectations of individuals serving in leadership positions at the University.

19. Despite the findings of retaliation and "problematic" conduct, the University and SMTD continue to provide little more than lip service in terms of Professor Satyendra's concerns regarding future retaliation, again resulting in material harm to him.

## COUNT I
### TITLE VII - RACE DISCRIMINATION

20. Plaintiff hereby incorporates all preceding paragraphs.

21. Plaintiff is a minority male.

22. During his employment with the University, Plaintiff has experienced discrimination on the basis of his race at the hands of his supervisor.

23. The race discrimination was intentional.

24. Plaintiff reported the discriminatory actions to the University, but the University failed to take any actions to prevent the discriminatory actions.

25. As a result of the University's conduct Plaintiff was harmed and continues to be harmed.

## COUNT II
## TITLE VII – RETALIATION

26. Plaintiff hereby incorporates all preceding paragraphs.

27. Plaintiff engaged in protected conduct when he complained of race discrimination to the University.

28. Plaintiff's supervisor was aware of his complaints.

29. Plaintiff's supervisor took adverse actions against Plaintiff because of his protected complaints of discrimination as described above.

30. Plaintiff's protected conduct motivated the retaliation.

31. The retaliation against Plaintiff was intentional and/or was with reckless indifference to Plaintiff's rights.

32. Plaintiff reported the retaliatory actions to the University, but the University failed to take any actions to remedy them or prevent future retaliation.

33. As a result of Defendants' conduct, Plaintiff was harmed and continues to be harmed.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

a. economic and non-economic damages;

b. emotional distress damages;

c. attorney fees and costs;

d. punitive damages; and

e. all other legal and equitable relief determined by the Court to be appropriate.

Respectfully Submitted,

/s/ Hideaki Sano
Hideaki Sano (P61877)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
sano@spplaw.com

Dated: August 17, 2023

## **JURY DEMAND**

Plaintiff demands a trial by jury in the above-captioned matter.

                                            Respectfully Submitted,

Dated: August 17, 2023                 /s/ Hideaki Sano
                                            Hideaki Sano (P61877)
                                            SALVATORE PRESCOTT
                                            PORTER & PORTER, PLLC
                                            Attorneys for Plaintiff
                                            105 East Main Street
                                            Northville, MI 48167
                                            (248) 679-8711
                                            sano@sppplaw.com